UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 24-13063-JJ

---

UNITED STATES OF AMERICA,
PLAINTIFF/APPELLEE,

v.

ANDREW A. FAHIE,
DEFENDANT/APPELLANT.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA.
HON. KATHLEEN M. WILLIAMS, U.S. DISTRICT JUDGE

---

# REPLY BRIEF OF APPELLANT ANDREW A. FAHIE

---

BENEDICT P. KUEHNE
MICHAEL T. DAVIS
KUEHNE DAVIS LAW, P.A.
100 S.E. 2ND ST., SUITE 3650
MIAMI, FL 33131-2154
TEL: 305.789.5989
FAX: 305.789.5987
EFILING@KUEHNELAW.COM
COUNSEL FOR APPELLANT FAHIE

## Certificate of Interested Persons and Corporate Disclosure Statement

### Case No. 24-13063-JJ
### United States v. Andrew A. Fahie

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-1, appellant certifies the following persons and entities may have an interest in this case:

Becerra, Jacqueline, U.S. District Judge

Butland, Shane

Charest-Turken, Gabrielle R.

Colan, Jonathan D.

Damian, Melissa, U.S. Magistrate Judge

Delgado, Joyce A.

Della Fera, Richard F.

Dopico, Hector A.

Doty III, George E.

Fahie, Andrew A.

Federal Public Defender's Office

Galvez, Stephanie

Genovese Joblove & Battista, P.A.

Gerarde, Kevin

Gonzalez, Juan A.

Goodman, Jonathan, U.S. Magistrate Judge (Retired)

Houlihan III, Raymond D'Arsey

Kirkpatrick, Lynn

Kuehne, Benedict P.

Kuehne Davis Law, P.A.

Lapointe, Markenzy

Laux, Zakarij N.

Louis, Lauren F., U.S. Magistrate Judge

Mariani, Nicole D.

Matzkin, Daniel

Maynard, Kadeem S.

Maynard, Oleanvine P.

McAliley, Chris M., U.S. Magistrate Judge (Retired)

McLaughlin, Sean T.

Otazo-Reyes, Alicia M., U.S. Magistrate Judge (Retired)

Peralta, Lucrecia

Pino, Tatiana G.

Reding Quinones, Jason A.

Richard F. Della Fera, P.A.

Rodriguez, Jose R.

Shadley, Frederic

Van Vliet, Theresa M. B.

Venable LLP

Williams, Kathleen M., U.S. District Judge

To appellant's knowledge, no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........ C1

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

REPLY ARGUMENT ........ 1

POINT 1 ........ 1

THE COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO DISMISS THE CHARGES DUE TO THE PROLONGED WITHHOLDING OF INFORMATION MATERIAL TO FAHIE'S DEFENSE AND THE TESTIFYING CASE AGENT'S REPEATED MISLEADING OR FALSE STATEMENTS MADE UNDER OATH. ........ 1

A. This Circuit Has Recognized the Existence of the Outrageous Government Conduct Defense When Government Conduct Violates Fundamental Fairness, As It Did Here. ........ 1

B. There Is No Requirement That Outrageous Government Conduct Must Occur Before the Allegedly Criminal Conduct. ........ 6

C. The Testifying Case Agent's Repeated Misleading or False Statements While Under Oath Are Sufficiently Outrageous to Warrant Dismissal. ........ 7

POINT 2 ........ 10

THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT WHAT IT CHARGED IN THE SUPERSEDING INDICTMENT — THAT FAHIE CONSPIRED TO IMPORT INTO THE UNITED STATES FIVE KILOGRAMS OR MORE OF A MIXTURE AND SUBSTANCE CONTAINING A DETECTABLE AMOUNT OF

COCAINE. ........................................................................ 10

POINT 3 ........................................................................................ 14

THE RECORD FAILS TO RULE OUT THAT ONE OF THE RULE 606(B) EXCEPTIONS APPLIES TO THIS CASE, THEREBY RENDERING THE DISTRICT COURT'S REFUSAL TO INQUIRE FURTHER A REVERSIBLE ABUSE OF DISCRETION. ........................................................... 14

CONCLUSION ................................................................................ 20

CERTIFICATE OF COMPLIANCE ..................................................... 20

CERTIFICATE OF SERVICE .............................................................. 22

# TABLE OF AUTHORITIES

**Page**

## Cases

*Chapman v. United States*,
500 U.S. 453, 111 S. Ct. 1919 (1991) ....................................13

*Humphries v. District of Columbia*,
174 U.S. 190, 19 S. Ct. 637 (1899) ....................................15

*In re Winship*,
397 U.S. 358, 90 S. Ct. 1068 (1970) ....................................10, 11

*Jackson v. United States*,
386 F.2d 641 (D.C. Cir. 1967) ....................................18

*Ramos v. Louisiana*,
590 U.S. 83, 140 S. Ct. 1390 (2020) ....................................14

*Scott v. United States*,
890 F.3d 1239 (11th Cir. 2018) ....................................7

*United States v. Arbane*,
446 F.3d 1223 (11th Cir. 2006) ....................................12

*United States v. Ciszkowski*,
492 F.3d 1264 (11th Cir. 2007) ....................................2

*United States v. Cuthel*,
903 F.2d 1381 (11th Cir. 1990) ....................................17, 18

*United States v. Dillard,*
No. 22-11704, 2023 WL 28981 (11th Cir. Jan. 4, 2023) ....................................8

*United States v. Edwards*,
469 F.2d 1362 (5th Cir. 1972) ....................................14, 15

*United States v. Flintroy*,
No. 23-13519, 2025 WL 2779895 (11th Cir. Sept. 30, 2025) .................. 9

*United States v. Foster*,
878 F.3d 1297 (11th Cir. 2018) .................. 17

*United States v. Haimowitz*,
725 F.2d 1561 (11th Cir. 1984) .................. 1, 2, 7

*United States v. Hamilton*,
168 F.4th 1354 (11th Cir. 2026) .................. 15, 16

*United States v. Horner*,
853 F.3d 1201 (11th Cir. 2017) .................. 5

*United States v. Hurtado*,
89 F.4th 881 (11th Cir. 2023) .................. 1, 6, 13

*United States v. Jayyousi*,
657 F.3d 1085 (11th Cir. 2011) .................. 6

*United States v. McGhee*,
553 F. App'x 895 (11th Cir. 2014) .................. 9, 12

*United States v. Morrison*,
449 U.S. 361, 101 S. Ct. 665 (1981) .................. 7

*United States v. Norwood*,
982 F.3d 1032 (7th Cir. 2020) .................. 16

*United States v. Nunez*,
1 F.4th 976 (11th Cir. 2021) .................. 12

*United States v. Obregon*,
893 F.2d 1307 (11th Cir. 1990) .................. 12

*United States v. Ofshe*,
817 F.2d 1508 (11th Cir. 1987) .......... 8

*United States v. Russell*,
411 U.S. 423, 93 S. Ct. 1637 (1973) .......... 8

*United States v. Sanchez*,
138 F.3d 1410 (11th Cir. 1998) .......... 2, 8, 13

*United States v. Stover*,
329 F.3d 859 (D.C. Cir. 2003) .......... 13, 17

**Rules**

Federal Rules of Evidence 606 .......... 15

## REPLY ARGUMENT

## POINT 1

### THE COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO DISMISS THE CHARGES DUE TO THE PROLONGED WITHHOLDING OF INFORMATION MATERIAL TO FAHIE'S DEFENSE AND THE TESTIFYING CASE AGENT'S REPEATED MISLEADING OR FALSE STATEMENTS MADE UNDER OATH.

### A. This Circuit Has Recognized the Existence of the Outrageous Government Conduct Defense When Government Conduct Violates Fundamental Fairness, As It Did Here.

The government asserts that because this Court has never adopted the outrageous government misconduct as a defense it "does not exist" (Answer Br. 21-22). While no defendant in this Circuit has yet prevailed by wielding outrageous government misconduct as defense, contrary to the government's assertion, this Court has, on more than one occasion, acknowledged the defense's existence, albeit in rare circumstances.[1] *See, e.g.*, *United States v. Hurtado*, 89 F.4th 881, 900 (11th Cir. 2023) ("Other than the entrapment-like circumstances, '**the defense can** only **be**

[1] The government references this Court's recognition of the defense on page 24 of its Answer Brief by stating when the defense can be invoked and citing to *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir. 1984).

**invoked** in the rarest and most outrageous circumstances,' when the government conduct 'violate[s] that fundamental fairness, shocking to the universal sense of justice, mandated by the due process clause of the fifth amendment.'") (emphasis added); *United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007) ("[W]e do recognize the outrageous government conduct defense . . . ."); *United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998) ("This Court recognizes the defense of outrageous governmental conduct . . . .") *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir. 1984) ("[T]he Supreme Court recognized outrageous governmental conduct as a legal defense. To succeed under this defense, the defendant must show that the challenged governmental conduct violated "'that fundamental fairness, shocking to the universal sense of justice,' mandated by the due process clause of the fifth amendment."). This case presents that rare and most outrageous circumstance.

In a sting operation such as this one, the credibility of the government's confidential informant ("CI") is not collateral; it is central. This investigation relied upon the actions, conversations, and recordings of an operative whose credibility was impugned by a Mexican federal

judge who dismissed drug charges against a high-ranking Mexican government official because the CI, the same CI this investigation depended upon, demonstrated "a 'lack of truth[,]'" conducted himself questionably "'by issuing false statements,'" and lacked credibility (Sealed DE203:2). The CI did not testify at Mr. Fahie's trial, so neither the district court nor the jury could examine for themselves the CI's demeanor or motives to establish his credibility or to evaluate the truthfulness of his interactions with Mr. Fahie. Both were forced to rely on a case agent's assurances, a case agent who the district court acknowledged had "thumb[ed] [his] nose at the Judicial System" and whose testimony was "less than forthcoming" (DE338:105-06), that the CI was "reliable, trustworthy" (DE322:24) in previous investigations and that "we never hand any issues with him" (DE335:84). Plainly, the CI was neither.

The case agent made multiple misrepresentations during both his pretrial detention hearing and trial testimony that were not merely "incorrect" (Answer Br. 19) or "erroneous" (Answer Br. 21). They were, at best, intentionally misleading, or worse, blatantly false, misleading, and made with the intent to deceive (DE322:23-24; 335:84-87).

At the pretrial detention hearing, while under oath, the agent falsely or misleadingly testified "the confidential source is reliable, trustworthy[,]" and that he was not "familiar with any incident where . . . information sourced from [this] confidential informant has been questioned . . . ." (DE322:24). The government's own sealed *ex parte* submission to the court (Sealed DE203) proves these statements false.

Additionally, at least twice, under oath and before the jury, the agent made materially false or misleading statements (DE335:85-86) after being admonished by the court to directly answer the question posed (DE335:85). One of those false or misleading statements was made in direct response to the district court's simple, direct question (DE335:86). The truth emerged only after the judge again took it upon herself to question the agent directly (DE335:87). The government's impeachment of its own witness confirmed the agent knowingly testified falsely or misleadingly in front of the jury (DE335:88).

The record does not establish that this agent made a mere mistake when he testified, or that he was confused as to the questions presented, or that his memory had failed him. Thus, though the district court did not make a finding that the agent perjured himself, it appears on this

record that the elements of perjury were present and that the district judge cautiously withheld career-impacting findings of the agent's deceptions. *See, e.g.*, *United States v. Horner*, 853 F.3d 1201, 1206 (11th Cir. 2017) ("Perjured testimony 'must be given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory.'").

This pattern of concealment and false or misleading testimony goes directly to the reliability of the sting itself and constitutes outrageous conduct that violates the principle of fundamental fairness mandated by the Fifth Amendment. The district court recognized the agent did not "comport[ ] himself the way one expects a Federal law enforcement agent should in front of a jury"; however, it left the remedy for that misconduct in the hands of the Department of Justice (DE338:106-07), a remedy that has proven elusive on this record. The proper remedy is dismissal; the district court's decision otherwise constitutes a reversible abuse of discretion that is not harmless on this record.

### B. There Is No Requirement That Outrageous Government Conduct Must Occur Before the Allegedly Criminal Conduct.

The government suggests the outrageous government conduct doctrine applies only when the outrageous conduct occurs "before the defendant commits his crime." (Answer Br. 23). Not so. In *Hurtado*, this Court recognized that the outrageous government conduct defense can be invoked in scenarios "other than the entrapment-like circumstances . . . " before finding that Hurtado had not shown the government conduct was sufficiently outrageous. 89 F.4th at 900 (humane treatment amid long detention aboard Coast Guard vessel not outrageous).

Importantly, the facts in *United States v. Jayyousi* (Answer Br. 23) do not resemble those presented here. There, the defendant claimed outrageous government conduct due to "alleged mistreatment" he suffered during his pre-indictment detention as an "enemy combatant" that had no impact on the judicial process itself. *United States v. Jayyousi*, 657 F.3d 1085, 1111-12 (11th Cir. 2011). Here, by contrast, the government's outrageous conduct had a directly negative impact on Mr. Fahie's pretrial proceedings, his trial itself, and his ability to defend against the charges brought by the government.

The Supreme Court has stated, "remedies should be tailored to the injury suffered from the constitutional violation . . . ." *United States v. Morrison*, 449 U.S. 361, 364, 101 S. Ct. 665, 668 (1981). Here, the court's failure to grant dismissal after the government withheld information material to Mr. Fahie's defense and after the case agent testified falsely or misleadingly before the jury "rewards the government for its unfair prosecution and condemns the [defendant] for a crime that the jury in a fair trial may well have acquitted him of. This not only corrodes faith in our system of justice, but it undermines justice itself, and it cannot be allowed." *Scott v. United States*, 890 F.3d 1239, 1243-1244 (11th Cir. 2018). The tailored remedy required here is dismissal for the outrageous government misconduct.

### C. The Testifying Case Agent's Repeated Misleading or False Statements While Under Oath Are Sufficiently Outrageous to Warrant Dismissal.

In the "rarest and most outrageous circumstances[,]" when the totality of the circumstances indicate the government's conduct violated "fundamental fairness" in a manner that is "shocking to the universal sense of justice[ ] mandated by the due process clause of the fifth amendment[,]" dismissal is warranted. *See Haimowitz*, 725 F.2d at 1577;

*see also United States v. Russell*, 411 U.S. 423, 431-32, 93 S. Ct. 1637, 1643 (1973).

The government discusses several inapplicable situations in which this Court did not find outrageous government conduct, suggesting that no such misconduct took place here (Answer Br. 24-25). The government's examples are unpersuasive. None of the cited cases involved the prolonged withholding of information material to the defense or a federal agent who, on multiple occasions, made false or misleading statements under oath to the court or to the jury that impacted the outcome of a defendant's trial. Indeed, *United States v. Sanchez* (Answer Br. 24-25) concerned government agents who supplied and sold illegal drugs to investigate and infiltrate as a means of investigation, *United States v. Sanchez*, 138 F.3d 1410,1413 (11th Cir. 1998); *United States v. Ofshe* (Answer Br. 25) involved a defense attorney who voluntarily agreed to electronically surveil conversations with his client to limit his own criminal liability, *United States v. Ofshe*, 817 F.2d 1508, 1511 (11th Cir. 1987); in *United States v. Dillard* (Answer Br. 25), the government used "a convicted felon as a CI to purchase firearms from [the defendant]—items which the CI could not legally possess[,]" *United States v. Dillard*,

No. 22-11704, 2023 WL 28981, at *4 (11th Cir. Jan. 4, 2023); the jury in *United States v. McGhee* (Answer Br. 25) heard all about the government CI's "troubled past and dirty laundry," *United States v. McGhee*, 553 F. App'x 895, 900 (11th Cir. 2014); and in *United States v. Flintroy* (Answer Br. 25), the government used a CI who had an outstanding arrest warrant and allowed him to drive without a valid license, *United States v. Flintroy*, No. 23-13519, 2025 WL 2779895, at *2 (11th Cir. Sept. 30, 2025). These facts do not impugn the sanctity of the legal proceedings themselves, as did the government's misconduct in this case.

Here, not only did the government's CI have credibility issues, but those issues were concealed from the court and the jury through the false and misleading testimony of the chief government witness. Where, as here, an informant's conduct and statements are the very essence of the defendant's prosecution, the jury must know of the informant's unreliability, and the government's knowledge of that lack of credibility, especially when the CI has a history of questionable conduct in undercover stings targeting high-ranking government officials just like the Defendant here, so that it can properly carry out its duty. The government agent testified falsely or misleadingly, intentionally so,

thereby tainting the jury's evaluation of the CI's credibility and depriving Mr. Fahie of the fundamental fairness required by the Fifth Amendment. On this record, dismissal is required.

## POINT 2

### THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT WHAT IT CHARGED IN THE SUPERSEDING INDICTMENT — THAT FAHIE CONSPIRED TO IMPORT INTO THE UNITED STATES FIVE KILOGRAMS OR MORE OF A MIXTURE AND SUBSTANCE CONTAINING A DETECTABLE AMOUNT OF COCAINE.

The government's superseding indictment charged Mr. Fahie with the crime of conspiracy "to import into the United States, from a place outside thereof, a controlled substance . . . [and] that the controlled substance involved in the conspiracy . . . is five kilograms or more of a mixture and substance **containing a detectable amount of cocaine**" (DE61:2) (emphasis added). In closing argument, the government confirmed "the third element [of Count 1] is that the object of the unlawful plan was to import five kilograms or more of cocaine" (DE339:12). The "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re*

*Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). Here, the government failed to prove what it charged beyond a reasonable doubt, that the mixture and substance Mr. Fahie allegedly agreed to import contained **a detectable amount of cocaine**. Thus, this Court must vacate Mr. Fahie's conviction for Count 1 and order his discharge.

In this sting operation, there was never any cocaine, a concession made clear from the government's own CI and case agent. The government did not seize any mixture or substance, let alone prove the composition of one using a chemist or laboratory report. Rather, the government relied on the word of its CI, of questionable credibility, who conceded "the liquid construction materials" that purportedly would be shipped into BVI waters would "never, never, never" test positive for cocaine because the substance had been subjected to a chemical process that would only test positive once it was extracted after an additional four days of chemical processing in Puerto Rico (DE338:71-73). On that government record, the only record of composition that exists, the government did not prove that the object of the conspiracy contained a detectable amount of cocaine.

The government's cited cases do not change the fact that it

affirmatively proved that the object of the conspiracy did not and never could contain a detectable amount of cocaine. Every drug conspiracy case the government identifies in its brief involves detectable amounts of a controlled substance or a substance affirmatively identified as a controlled substance. For example, in *United States v. Obregon*, upon which *United States v. Arbane*[2] (Answer Br. 27) relies, the defendants' convictions "for conspiracy to import at least five kilograms of cocaine" were affirmed after the FBI seized 613 kilograms of cocaine from the vessel they were aboard. *United States v. Obregon*, 893 F.2d 1307, 1309, 1311-12 (11th Cir. 1990). Additionally, *United States v. Nunez* (Answer Br. 27), the Coast Guard recovered seven bales containing roughly 180 kilograms of cocaine to support the defendants' conspiracy to distribute and possess cocaine convictions. *United States v. Nunez*, 1 F.4th 976, 982-83, 992 (11th Cir. 2021) *see also United States v. McGhee*, 553 F. App'x 895, 898 (11th Cir. 2014) (Answer Br. 25) (defendant was "to keep 10 kilograms of cocaine as their payment for the robbery"); *United States v.*

[2] In *Arbane*, this Court overturned the defendant's importation conspiracy conviction because there was insufficient evidence of a culpable co-conspirator. *United States v. Arbane*, 446 F.3d 1223, 1233 (11th Cir. 2006). The decision did not rest on whether the government could prove a detectible amount of drugs.

*Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998) (Answer Br. 25) (ATF agents informed defendants "large amounts of narcotics could be stolen in a home invasion").[3]

The government's attempt to discount *Chapman v. United States* obfuscates the issue. *Chapman* mandates that the weight of the entire mixture or substance is only considered **once a detectable amount of the drug is found** in that mixture or substance. *Chapman v. United States*, 500 U.S. 453, 459-60, 111 S. Ct. 1919, 1924-25 (1991). This underscores the legal requirement of being able to detect some amount of a controlled substance in a mixture. The issue here is not whether the concealment of a substance renders it controlled or not controlled (Answer Br. 32-33); the issue is whether the government proved beyond a reasonable doubt that the mixture it alleges was the object of the conspiracy contained a detectable amount of cocaine. It did not, and the government evidence was conclusive on this fact.

The Government's dictionary argument fails because it reads "detectable" in isolation rather than in the context of the whole statute.

[3] Drugs were also recovered in *United States v. Hurtado*, 89 F.4th 881, 886, 889 n.9 (11th Cir. 2023), and *United States v. Stover*, 329 F.3d 859, 863 (D.C. Cir. 2003).

It defines "detectable" as "capable of being detected" and "detect" as "to discover or determine the existence, presence, or fact of" a thing (Answer Br. 34). But the statute does not ask whether cocaine could someday be produced and then detected; it asks whether the substance the defendant conspired to import was one "containing a detectable amount" of cocaine, *i.e.*, whether it was a substance in which, as it existed at the time of the alleged conspiracy, cocaine was present such that it could be discovered.

Because the Government proved, at most, an agreement to move a substance that, as it purportedly existed at the time and place charged, contained no detectable cocaine, the evidence was insufficient to sustain Mr. Fahie's conviction on Count 1. That conviction must be vacated and the Defendant discharged.

## POINT 3

### THE RECORD FAILS TO RULE OUT THAT ONE OF THE RULE 606(B) EXCEPTIONS APPLIES TO THIS CASE, THEREBY RENDERING THE DISTRICT COURT'S REFUSAL TO INQUIRE FURTHER A REVERSIBLE ABUSE OF DISCRETION.

"[T]he Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court . . . ." *Ramos v. Louisiana*, 590 U.S. 83, 93, 140 S. Ct. 1390, 1397 (2020). The very

purpose of the jury poll is to ensure the jury's verdict is, in fact, unanimous. *United States v. Edwards*, 469 F.2d 1362, 1366 (5th Cir. 1972) (quoting *Humphries v. District of Columbia*, 174 U.S. 190, 194, 19 S. Ct. 637, 638-39 (1899)). "When a juror states that he has doubt, the trial judge should be alert to the probability that there may not be unanimity in the verdict." *Id.* at 1366-67.

The government's contention that "there is no indication whatsoever of extraneous prejudicial information, outside influence, mistake, or racial animus by either" Juror Garcia or Juror Bowen (Answer Br. 37) is precisely why Mr. Fahie's position on this issue is correct. There is no indication on this record of extraneous prejudicial information, outside influence, mistake, or racial animus because the district court abused its discretion and failed to conduct a satisfactory, searching juror inquiry to establish on the record whether one of the Rule 606(b) exceptions applied. *See* Fed. R. Evid. 606(b).

This case is not like *United States v. Hamilton*, upon which the government relies (Answer Br. 37-38). There, **twelve days after** the verdict was read and the jurors polled, a juror expressed regret about his decision to find the defendant guilty in a questionnaire where he

described misunderstanding the district court's instructions as the reason for his guilty verdict. *United States v. Hamilton*, 168 F.4th 1354, 1365, 1367 (11th Cir. 2026). This Court found that misunderstanding the court's instructions falls outside the scope of Rule 606(b)'s exceptions and "**in the absence of any indicia of hesitation**, the juror's note casts no doubt on the legitimacy of the verdict." *Id.* at 1366-67 (emphasis added).

*United States v. Norwood* (Answer Br. 38-39) is also inapposite. There, a juror expressed hesitation before affirming her verdict. *United States v. Norwood*, 982 F.3d 1032, 1055 (7th Cir. 2020). However, the district court, noting the hesitation, repolled each juror; again, the juror affirmed her verdict. *Id.* **After sleeping on her verdict**, the juror called chambers and, in a telephone conversation in which all parties were present, expressed she "didn't get the answers that [she] needed" from other the other jurors and for that reason she "didn't feel like the verdict that [she] said was right." Defense counsel was unsatisfied with the thoroughness of the phone call, so the district court called the juror a second time and asked her if she had anything more to add. *Id.* The juror's second response mirrored her first. *Id.* at 1055-56. Ultimately, the circuit court found the district court properly denied the defendant's

motion for a new trial and request for further inquiry because none of the Rule 606(b) exceptions were found after the district court's "thorough" inquiry since the juror "at most mentioned **internal** pressure." *Id.* at 1057 (emphasis in original).[4]

The government's reliance on *United States v. Foster* (Answer Br. 38) is similarly misplaced. There, like in *Hamilton*, a juror wrote to the court "**several days after** the trial's conclusion" to express regret over her guilty verdict, and to state she only rendered that verdict because she was bullied by other jurors. *United States v. Foster*, 878 F.3d 1297, 1303 (11th Cir. 2018) (emphasis added). This Court found the juror's statements "concern[ed] purely internal matters" and were thus inadmissible under Rule 606(b). *Id.* at 1310.

*United States v. Cuthel* (Answer Br. 39) also presents very different facts. There, **one day after** the verdict was rendered, defense counsel received a phone call from an anonymous woman, "**possibly** a juror," stating jurors "were pressured into making [their] decision" and expressing regret for the verdict. *United States v. Cuthel*, 903 F.2d 1381,

---

[4] In *United States v. Stover*, 329 F.3d 859, 865 (D.C. Cir. 2002) (Answer Br. 39), jurors waited **five days** to express reservations as to their verdict that polling confirmed was unanimously rendered.

1382 (11th Cir. 1990) (emphasis added). An alternate juror also sent the prosecutor a letter expressing "her views of the trial, the lawyers[,] and the defendants." *Id.* The letter did not raise doubt as to the unanimity of the verdict. *Id.* at 1384-85. These communications were insufficient "to show that the integrity of the trial process was impugned." *Id.* at 1383.

Unlike in the cases the government cites, here, two jurors, roughly **half an hour after** the jury was discharged, expressed to an officer of the court, in person, that the verdict was not theirs (DE351:2-4). Moreover, before answering the jury poll, one of those jurors, Juror Garcia, "paused a minute" (DE339:132), thereby supplying the "indicia of hesitation" absent in *Hamilton*. Both defense counsel and the court noted this juror's hesitancy on the record (DE339:132-33) as required by *Jackson v. United States*, 386 F.2d 641, 643 (D.C. Cir. 1967) (circumstances indicating the verdict might not be unanimous should be "immediately called to the court's attention upon the record").

Moreover, the district court here did not conduct the "thorough" inquiry conducted in *Norwood*. Instead, the court asked a single question of **only** Juror Garcia: "the verdict that was rendered on February 8th, was that your verdict?" (DE351:16). Juror Garcia answered ambiguously:

"Yes. At the time that I answered that." (DE351:16). Juror Garcia's ambiguous answer was not clarified with any follow-up questions by the district judge, to which defense counsel objected (DE351:17). The other juror who expressed disagreement with the verdict, Juror Bowen, was never questioned at all (DE351:18). Accordingly, neither the district court nor this Court can determine the reasons for the jurors' expressed disagreement with the verdict. The record does not rule out that extraneous prejudicial information was improperly brought to the jury's attention, or that an outside influence was brought to bear on any juror, or that a mistake was made in entering the verdict on the verdict form. Unlike the jurors in *Hamilton*, *Foster*, and *Norwood*, Jurors Garcia and Bowen gave no reasons for disagreeing with the verdict at all, and the district court made no inquiry of either on this crucial point.

On this record, the district court's failure to conduct a more comprehensive interview with Juror Garcia and the failure to ask a single question of Juror Bowen constitute an abuse of discretion warranting a reversal with instructions to order a mistrial or conduct further inquiry into the unanimity of the verdict.

## CONCLUSION

All the convictions must be dismissed due to the outrageousness of the government's misconduct and false testimony. Moreover, the evidence did not prove Mr. Fahie conspired to import a substance containing a detectable amount of cocaine; accordingly, his conviction for Count 1 must be vacated. Furthermore, this Court must direct the district court to declare a mistrial or remand the case for an evidentiary hearing because there is a serious question whether the jury's verdict was unanimous.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief is printed in Century Schoolbook 14-point font and contains 3,895 words, as counted by MS Word.

Respectfully submitted,

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
FLORIDA BAR NO. 233293
**MICHAEL T. DAVIS**
FLORIDA BAR NO. 63374
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2ND ST., SUITE 3650
MIAMI, FL 33131-2154
TEL: 305.789.5989
FAX: 305.789.5987
BEN.KUEHNE@KUEHNELAW.COM
EFILING@KUEHNELAW.COM

## CERTIFICATE OF SERVICE

I CERTIFY on September 8, 2026, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

By: *S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**